IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM LOCKWOOD | * | |
|     Plaintiff | * | |
| v. | * | Civil Action No. WMN-02-CV-2068 |
| PACIFIC USA, LTD., et al. | * | |
|     Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND MOTION TO STRIKE AFFIDAVIT OF NAOJI TANAKA**

Plaintiff, William Lockwood, by and through his attorneys, Paul D. Bekman, Michael P. Smith, Jason C. Buckel and Salsbury, Clements, Bekman, Marder & Adkins L.L.C., hereby replies to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defendants' Opposition") pursuant to Local Rule 105(2)(a) and files his Motion to Strike Affidavit of Naoji Tanaka pursuant to Fed.R.Civ.P. 37(c)(1) and states in support thereof:

**ARGUMENT**

Defendants' Opposition raises two defenses to Plaintiff's summary judgment motion. First, Defendants claim that a genuine factual dispute exits whether the Pacific Cycle USA "Strike" mountain bike (the "Bicycle") was in substantially the same condition as it was when it left their control. Defendants claim they have evidence that the Bicycle "had been modified, previously damaged, misused and subject to trick riding," all of which somehow contributed to the separation of the steer tube and fork which caused Plaintiff's injuries. See Defendants' Opposition at 8. Second, Defendants assert that the expert report of David Mitchell creates a

genuine dispute of material fact as to the existence of a defect in the fork component of the Bicycle. As shown below, neither of these contentions is factually or legally accurate.

> **A.    Defendants Have Presented No Evidence that the Steer Tube/Fork Were Damaged by Plaintiff's Misuse of the Product or Were <u>Altered in Any Way</u>**.

The components of the Bicycle at issue are the steer tube and the fork. Except for its bottom portion, the steer tube is totally inside the head tube of the Bicycle. The bottom portion of the steer tube extends out the lower end of the head tube and is designed to go inside the fork crown where it is bonded into place so that it does not separate from the fork crown. Accordingly, the steer tube remains hidden from view and needs no maintenance or inspection for the life of the Bicycle. <u>See</u> Schubert Report at 2, 3 (**Exhibit C**).

Defendants' Opposition offers no evidence that the steer tube, the fork, the head tube, or even the frame were modified or altered in any way once the Bicycle left the Defendant's control at the time of sale in 1997. Defendants do not and cannot point to any specific information elicited during discovery which tends to suggest that product misuse modified or altered these components and contributed to the separation of the steer tube from the fork crown in this case.[1] Defendants' evidence is nothing more than a "laundry list" of unrelated repairs made to unrelated components of the Bicycle prior to separation of the steer tube from the fork crown.

Although the Defendants offer no analysis of why repairs or alterations to other components could affect the bond between steer tube and the fork crown, they ask the Court to infer that these repairs were necessary because of some product misuse that somehow altered the

---

[1]Defendants did not provide any evidence of misuse in the Answer to Interrogatories or at its Corporate Designee Deposition. <u>See</u> Pacific Cycle's Answers to Interrogatories Nos. 19 and 21 (**Exhibit G**); Deposition of Anita Van Amber at 114 - 18 (**Exhibit I**).

steer tube and front fork and led to the separation in this case. It strains credulity, however, to suggest that because such components as the seat, cupholder and kickstand of the subject bicycle "had been previously broken . . . or were worn out," one could reasonably infer that the mechanical bond between the steer tube and the fork crown was similarly "broken" or "worn out." See Hartmeyer v. Trane Co., 216 F. Supp. 2d 500 (D. Md. 2002)(opposing party may not create factual dispute through speculation); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(opposing party must do more than simply show that there is some metaphysical doubt as to the material facts to defeat motion).

Defendants did not contended during formal discovery that either product misuse or alteration occurred; yet they now ask this Court to infer misuse and alteration. See Pacific Cycle's Answer to Interrogatories Nos. 21-22 (**Exhibit G**); Deposition of Anita Van Amber at 114 - 18 (**Exhibit I**). They likewise fail in their Opposition to show any misuse or alteration. Noticeably missing from Defendants' Opposition is any evidence that the acknowledged repairs to other, unrelated components of the Bicycle were occasioned by "misuse," as opposed to the expected use of a mountain bicycle which produces ordinary wear and tear.[2] A manufacturer remains liable for injuries caused to a user of a defective product whose use of that product was reasonably foreseeable. See Ellsworth v. Sherne Lingerie, 303 Md. 581, 495 A.2d 348, 355 (1985). Thus, even if the previous repairs creates an inference that the Bicycle was frequently used, a factual basis is still lacking to support a conclusion of "misuse."

---

[2] Defendants' own expert David Mitchell, concludes that while the bicycle sustained "wear and tear," it "remained serviceable" if not for the separation of the subject components. Mitchell Report, **Exhibit F**, p. 2.

The only "fact" cited by Defendants to support product misuse by Plaintiff is so lacking in foundation that it belies the merits of their opposition to summary judgment. Defendants claim that "at the time of the incident, Plaintiff was stunting the bike in a manner specifically warned against by Pacific Cycle" by performing a maneuver known to generations of children as a "bunny hop" which caused the "bicycle [to pound] back to the ground with great force." Defendants' Opposition at 7-8.[3] This assertion is not supported by any reference to the record in this case.

Although Defendants say that the Plaintiff used the Bicycle "in a manner specifically warned against by Pacific Cycle," they do not direct the Court to a single written or verbal warning or instruction provided by them to Plaintiff, warning against the supposed dangers of performing a "bunny hop" on a Pacific Cycle mountain bike. The exhibits to Defendants' Opposition contain no factual reference or document demonstrating that Pacific Cycle warned users of their bicycles that "bunny hopping" could cause damage to the bicycle and specifically to the fork crown/steer tube components, resulting in potential accidents. As such, Defendants' self-serving claim of misuse must be found unavailing by the Court.[4]

---

[3] The contention that the type of "bunny hop" maneuver Plaintiff engaged in constituted product misuse is not even supported by the testimony of Plaintiff and Jesse Wolcott that is appended to Defendants' own memorandum. For example, Plaintiff stated that the front wheel (the side where the fork/tube separation occurred) came off the ground only two inches when he performed a "bunny hop." Deposition of William Lockwood, Exhibit 1, at p. 120-121. Further, Jesse Wolcott, the eyewitness to the incident, testified that "[Plaintiff] didn't really use his bike . . . [and] the most he could do was a little bunny hop." Deposition of Jesse Wolcott, **Exhibit H**, at p. 31-32. Wolcott further stated that the manhole cover over which Plaintiff was "bunny hopping" on the date of the incident was level with the pavement, meaning Plaintiff was merely "popping" his bicycle over the obstacle. Id.

[4] Similarly, Defendant's assertion that the "bunny hop" as performed here caused the Bicycle to "pound back to the ground with great force" is completely unsupported by any actual evidence, as opposed to Defendants' hyperbolic litigation claims. No individual or expert has even attempted to testify that a "bunny hop" could cause such "great force" so as to initiate a

The only alleged correlation offered by Defendants between the prior repairs, Plaintiff's use of the product, and the ultimate failure of the fork crown/steer tube bond appears to be David Mitchell's "question" as to a mismatch between the front and rear tires and his bald "opinion" that "conditions related to the manner of use and/or the specific manufacturing procedures related to this fork ultimately led to the fork separation."  Mitchell Report, **Exhibit F**, p. 3.  Mitchell points only to "bunny hopping" as a "condition related to manner of use" – without any suggestion or support for the proposition that "bunny hopping" is a misuse of a mountain bike.  Mitchell's report is devoid of any analysis of how this particular maneuver or repairs to other components of the Bicycle could have caused the fork crown and the steer tube to separate.  Merely because an expert says "it is so" does not make it so.  Viterbo v. Dow Chemical, 826 F.2d 420, 424 (5th Cir. 1987).

In sum, Defendants' product misuse or alteration argument is a classic "red herring."  They seek to focus the Court's attention on repairs to other components, characterize normal and intended product use as misuse without any factual support, and manufacture disputes of material fact more adroitly than they manufactured the subject bicycle.  The Court should not fall prey to such stratagems and lose sight of Plaintiff's clear and undisputed evidence, buttressed by the opinions of multiple experts, which uniformly demonstrate that Plaintiff's injuries stem from a defective bond or attachment between the fork crown and the steer tube on the Bicycle.

**B.   Uncontroverted Expert Opinion Establishes that the Bicycle was Defective.**

---

separation of the crown fork and steer tube in the Bicycle.

Plaintiff will not review in detail the multiple expert opinion, derived from fact, which support his Motion for Partial Summary Judgment. It is sufficient to note that every expert who examined the Bicycle concluded that there was a failure on the manufacturer's part to adequately secure the steer tube to the fork crown, causing the separation here. That failure, whether by inadequate design or manufacturing practice, caused the Plaintiff's injuries and constituted a defect. See Reports of James Green (**Exhibit B**), John Schubert (**Exhibit C**) and Robert Hinton (**Exhibit E**).

Simply put, there is no question that the failure to secure or bond these two critical components was the cause of the subject incident. Tellingly, Defendants' expert, Mitchell, agrees (despite Defendants' desperate assertions to the contrary) that the fork was defective, resulting in the separation. The most critical portions of Mitchell's report read as follows:

> It is the writer's further opinion that the specific SR Suntour Duo Track 7006 fork installed on Mr. Lockwood's bicycle differed from other, virtually identical, forks *in a manner that permitted the observed fork separation.* The specific strength of the mechanical joint holding Mr. Lockwood's fork together cannot be assessed at this juncture due to the separation and consequential damage.
>
> *Accordingly, the efficiency of the steerer tube/crown joint cannot be evaluated in the post-accident condition resulting in a specific opinion as to any defect or deficiency in that fork. . . .*
>
> It is the writer's opinion that conditions related to the manner of use *and/or the specific manufacturing procedures related to this fork ultimately lead to the fork separation. . . .*
>
> *It is the writer's concluding opinion that the fork on Mr. Lockwood's bicycle was different than other Duo Track 7006 forks and that difference, in conjunction with the manner of use, directly led to the fork crown/steerer tube separation.*

Mitchell Report, **Exhibit F**, p. 3 (emphasis added).

The Defendants' own expert concedes in these excerpts that a manufacturing defect existed in the fork component of the subject bicycle which resulted in the separation. Mitchell, of course, cannot seem to offer any opinions and certainly no facts in support of an opinion, as to: (1) what were the "differences" between this specific fork and other Suntour Duo Track 7006 forks; (2) why this "difference" "directly led," "ultimately led" or "permitted" the fork tube separation; (3) what "manner of use" caused or contributed to the separation; (4) why Pacific Cycle is not responsible for a defective condition caused by a defective component in a bicycle manufactured by Pacific Cycle.[5]

Mitchell's opinion, wholly absent of factual support and rife with concessions that the subject fork was in some way defective, does not create a genuine dispute of material fact preventing the entry of summary judgment on Plaintiff's manufacturing defect and breach of warranty claims. No credible evidence or scientific or engineering analysis is presented by Mitchell to suggest that the steer tube and front fork, and thus the Bicycle, did not suffer from a defective condition when it left Defendants' control. See Phipps v. General Motors Corp., 363 A.2d 955, 958 (Md. 1976). "[A] party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (cited in Rohrbaugh v. Wyeth Laboratories, Inc., 719 F.Supp. 470, 475 (M.D.W.Va. 1989)).

---

[5] Pacific Cycle now contends that they are not the manufacturer or designer of the bicycle. In fact, Pacific's corporate designee, Anita Van Amber, claimed to even have difficulty understanding the definition of the terms manufacture and design. See Van Amber deposition, **Exhibit I**, pp. 18-21, 57-60. Pacific has provided no legal analysis in support of a contention that they are not the legal manufacturer of the subject bicycle. In fact, Mitchell refers to Pacific as the "bicycle manufacturer" in his report.

Lacking any contrary evidence, Defendants try to distract the Court's attention from the undisputed fact of a defect in the steer tube and fork components of the Bicycle by suggesting that, because Plaintiff's experts offer differing but complementary opinions on the defect, a genuine factual dispute exists. Presenting alternative theories of relief is obviously acceptable and appropriate. Product liability cases frequently involve claims of both design defect and manufacturing defect.

In this case, one of Plaintiff's experts, James Green, has opined that he believes it was defective to not secure the fork crown and steer tube via a weld. Two other experts, John Schubert and Robert Hinton, have opined that the fork/tube connection was defective as achieved even in the absence of a weld. Every expert, however, agrees that the fork crown and steer tube were not properly bonded or secured which caused the separation. Unanimity on this ultimate issue warrants summary judgment on Plaintiff's manufacturing defect and breach of warranty claims.

### C. The Tanaka Affidavit Should be Stricken

Plaintiff propounded discovery and deposed the corporate designee of the Defendant Pacific Cycle. In discovery, the Defendants produced no documents and provided no information in their Answers to Interrogatories relating to the design or the manufacture of the fork or steer tube of the Bicycle. Defendants in their Answer to Interrogatory No. 2, did not identify any individual with discoverable information that tended to support any position that they were taking in this case. Defendants in their Answer to Interrogatory No. 15, did not identify any individual who had any knowledge concerning the manufacture of the design of the fork or the steer tube. Defendants in their Answer to Interrogatory No. 16, did not provide the material makeup, the

hardness, the yield strength or the dimensions of either the steer tube or the fork crown. The only non-medical expert ultimately identified by Defendants was David Mitchell whose report was provided in accordance with Rule 26. Because the Plaintiff had made his expert disclosures on August 30, 2002, he reasonably believed that Defendants understood the claims he was making, and that the Defendants had disclosed to him with all facts and expert opinions that they would be offering in the defense.

Federal Rule 37(c)(1) provides that when a party without substantial justification fails to disclose information required by Rule 26(a), that party may not use that information to oppose a motion. Exhibit 7 to Defendants' Opposition is a partially hand-written affidavit of Naoji Tanaka, an employee of Third-Party Defendant SR Suntour, Inc. As shown above, Mr. Tanaka has never been disclosed to Plaintiffs as an individual having <u>any</u> knowledge or expertise related to the subject matter of this litigation. <u>See</u> Pacific Cycle's Answer to Interrogatories Nos. 2, 15 and 25 (**Exhibit G**). His affidavit should not be considered in opposition to Plaintiff's Motion.

The failure of the Defendants to identify and disclose Mr. Tanaka's expert opinions is not harmless. Plaintiff knows absolutely nothing about Mr. Tanaka, the extent of his knowledge, the extent if any in his involvement in the design or manufacture of the 7006 fork used in the Bicycle, his communications with the Defendants, or what he means or intends by any statement in his affidavit. Discovery closed for the Plaintiff and the Defendants on January 31, 2003, one day after the Mitchell Report was produced. Plaintiff had no opportunity to depose Mr. Tanaka or to examine any documents relating to the statements he makes in his affidavit. Dispositive motions were to be filed by February 14, 2003, and Plaintiff reasonably believed that the Defendants had fully responded to discovery.

Tanaka was not designated by Defendants as an expert witness within the applicable deadline.[6] Defendants attempt to buttress their designated expert's rather sparse report with additional conclusory allegations of an undisclosed expert witness is untimely. The Tanaka Affidavit should be stricken pursuant to Fed.R.Civ.P. 37(c)(1).[7]

## CONCLUSION

For the reasons state in this and his original memorandum, the Plaintiff William Lockwood respectfully requests that this Honorable Court grant his Motion for Partial Summary Judgment against the Defendants Pacific Cycle, LLC, and Toys "R" Us - Delaware, Inc. on the issue of liability.

                                                                        _____
PAUL D. BEKMAN (Fed. Bar No. 00019)
MICHAEL P. SMITH (Fed. Bar No. 03179)
JASON C. BUCKEL (Fed. Bar No. 24766)
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201

---

[6] The Tanaka affidavit, in addition to factual averments, contains numerous statements of expert engineering opinion, including that the design of the subject fork component met industry standards and was "acceptable."

[7] The Tanaka affidavit, tellingly, offers no analysis of how or why the fork crown/steer tube separation occurred in the subject bicycle. Rather, it merely alleges that other forks using a similar mechanical bond fit have not been recalled or "demonstrated a history of fork failure or fork crown/steerer tube joint separations." This rather general statement leaves open the question of whether any other similar forks have separated and under what circumstances. Moreover, the fact that prior products did not fail does not obviate the manufacturer's responsibility for a product that clearly did fail, like the subject bicycle herein.

(410) 539-6633

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of March, 2003, a copy of the foregoing Plaintiff's Reply to Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment was forwarded electronically to the following:

Michele R. Kendus, Esquire
Venable, Baetjer & Howard, LLP
1800 Mercantile Bank & Trust Bldg.
Two Hopkins Plaza
Baltimore, MD 21201-2978
Attorneys for Defendant, Pacific USA, LTD
    and Pacific Cycle, LLC

Daniel Moore, Esquire
Moore & Jackson, LLC
305 Washington Avenue, Ste. 401
Towson, MD 21204
Attorneys for Defendant, Toys "R" US-Delaware, Inc.

Edward J. Lopata, Esquire
A. Lee Lundy, Esquire
Tydings & Rosenberg LLP
100 E. Pratt Street, 26th Floor
Baltimore, Maryland 21202
Attorneys for Third-Party Defendant
SR Suntour, Inc. and SR Suntour, USA

 

PAUL D. BEKMAN
MICHAEL P. SMITH
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.

Attorneys for Plaintiff