15 April 2003

Mr. Edward J. Lopata, Esq.
Tydings & Rosenberg LLP
100 East Pratt Street
Baltimore, MD 21202

Re: Lockwood v. Pacific Cycle, et al.

Dear Mr. Lopata:

This letter will constitute my preliminary report in this
matter. At your request I have examined the bicycle at
issue and reviewed documents including expert reports,
expert credentials, bicycle owner's manuals, deposition
transcripts, pleadings, photographs of the bicycle and a
bicycle repair invoice.

<u>Background</u>:

According to the available materials, the bicycle at issue
was produced by Pacific Cycle, purchased at Toys R Us in
1997, repaired in 1998 and involved in an accident in which
William Lockwood was injured in 1999. The alleged cause of
the accident was the separation of the steering tube from
the fork crown while Mr. Lockwood was executing a "bunny
hop" maneuver over a manhole cover.

PLAINTIFF'S
EXHIBIT
1

Mr. Edward J. Lopata, Esq.
Tydings & Rosenberg LLP
                                                                    Page 2
                                                            15 April 2003

<u>Examination</u>:

The bicycle was examined visually under room lighting
conditions in Baltimore, MD on 10 April 2003. The
appearance of the bicycle is consistent with the
photographs which have been obtained by others. The bicycle
has been disassembled, and it is obviously not in the same
condition as it was immediately following the accident. In
particular, the steerer tube is loose in the frame,
suggesting that someone has removed the steerer tube for
inspection and not retightened the connection. The record
indicates that the bicycle has been shipped at least once
in the box in which it was being stored at the time of the
examination.

Several areas of the bicycle show evidence of very heavy
use and repeated contact with pavement or other hard,
abrasive materials. The ends of the handlebars are deformed
in a manner which is consistent with many such impacts.
Some components, such as the seat and the rear wheel,
appear to be relatively recent replacements. The fork crown
has separated from the steerer tube. The steerer tube has
striations in the joint area, and there is very little
evidence of deformation on the steerer tube; there is one
area which may represent some deformation during final
separation and/or impact with a hard surface following the
final separation. There are indications that the bicycle
saw considerable use with the rear wheel either bent or
misaligned so that it rubbed on the frame.

The joint area of the fork crown exhibits two different
appearances. In the lower portion, there are essentially
undisturbed striations which would appear to correspond
with the striations on the steerer tube. On the upper
portion, the metal is smeared, consistent with repeated
motion of the fork crown relative to the steerer tube. This
damage is not consistent with a single, final separation
event; rather, it is consistent with continued looseness of
the joint between the steerer tube and the fork crown over
a long period of use.

Mr. Edward J. Lopata, Esq.
Tydings & Rosenberg LLP                                          Page 3
                                                           15 April 2003

<u>Analysis</u>:

The record indicates that the bicycle at issue was designed
with three major objectives in mind:

1.  To appeal to the customer as a "mountain bike" type
    bicycle.

2.  To sell at Toys R Us for approximately $150.00.

3.  To meet all applicable regulations.

The record also indicates that the bicycle at issue was not
designed for aggressive off-road riding and that it was not
designed for stunt riding. The record is not clear whether
the bicycle at issue was designed to "bunny hop" over a
manhole cover when ridden by a person weighing 180 pounds.

The design process which was used included several parties:
Toys R Us set the overall objectives; Pacific Cycle turned
those objectives into design specifics; China Bicycle
Company designed a bicycle to meet all of the applicable
objectives, selecting from among off-the-shelf components
manufactured by several companies, including SR Suntour.
The crown fork assembly which was selected by Pacific Cycle
was produced by SR Suntour.

The design used by SR Suntour for this particular crown
fork assembly uses a steel steerer tube and a nonferrous
fork crown; these components are joined together by a
process described as thermal bonding. The record does not
indicate precisely how this thermal bonding is accomplished
in practice; it is assumed that the aluminum is heated
and/or that the steel is cooled, but details are not
available at this time. The resistance to relative motion
between the steerer tube and the fork crown is aided by the
presence of striations on the steerer tube which
effectively lock the steerer tube into place in the fork
crown. The condition of the joint portion of the fork crown
is consistent with loosening of the joint and repeated
rotary motion of the steerer tube in the fork crown. By all
indications, the separation of the steerer tube and the
fork crown was a progressive event and not a sudden
failure.

Mr. Edward J. Lopata, Esq.                              Page 4
Tydings & Rosenberg LLP                            15 April 2003

The record indicates that Mr. Lockwood noticed a looseness
somewhere in the steering mechanism of the bicycle during
1998, the bicycle was taken to a bicycle mechanic and
repairs were made to the bicycle at that time. The record
does not indicate whether this looseness was the observed
looseness of the steerer tube in the frame, a warning of
the progressive failure in process or the often experienced
looseness of the joint between the steerer tube and the
handlebars.

It has been suggested that the integrity of the joint
between the steerer tube and the fork crown would be
improved by the use of welding and/or adhesive bonding. In
practice the welding of steel to nonferrous metals is
difficult to accomplish. Adhesive bonding might have added
a small amount to the mechanical strength provided by the
striations and the thermal bonding process, but at the time
of the accident the joint had clearly failed to the point
where the steerer tube was able to move within the fork
crown; even in this failed condition, the bicycle continued
to function until Mr. Lockwood's "bunny hop" maneuver.

The record indicates that the design of the crown fork
assembly probably met the established objectives of price,
appearance and performance at the time that the crown fork
assembly left the control of SR Suntour and, indeed, the
control of China Bicycle Company, Pacific Cycle and/or Toys
R Us. After the bicycle left the control of these parties,
it was subjected to considerable abuse, and as a result of
that abuse, the connection between the steerer tube and the
fork crown was separated, ultimately leading to the
accident.

APR. -15' 03 (TUE) 17:40    T & R LLP                    TEL:410 752 9893            P. 018

Mr. Edward J. Lopata, Esq.                                    Page 5
Tydings & Rosenberg LLP                              15 April 2003

Conclusions:

1. The crown fork assembly was designed and manufactured to
   meet the established objectives for the bicycle of
   price, appearance and performance.

2. The crown fork assembly failed as the result of abuse of
   the bicycle.

3. Despite the separation of the joint of the crown fork
   assembly, the joint continued to provide support and
   steering control of the bicycle until the "bunny hop"
   maneuver was attempted.

Obviously, as discovery continues in this matter, it may be
necessary to modify or expand on these conclusions. Please
let us know if we may be of further assistance with this or
any other materials problem.

                              Sincerely,



                              Andrew W. Blackwood, Ph.D.
                              Vice President, Technical

AWB:fo

Work No.: B1387
Inv. No.: 35681