IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RECEIVED
APR 17 2003
TYDINGS & ROSENBERG LLP

| | | |
|---|---|---|
| WILLIAM LOCKWOOD. | * | |
| Plaintiff | * | |
| v. | * | |
| PACIFIC CYCLE, LLC and TOYS " R" US-DELAWARE, INC. | * | |
| | * | |
| Defendants/Third-Party Plaintiffs | * | Civil Action No: WMN-02-CV-2068 |
| v. | * | |
| SR SUNTOUR, INC. and SR SUNTOUR, USA | * | |
| | * | |
| Third-Party Defendants | * | |

\* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S ANSWERS TO INTERROGATORIES FROM THIRD- PARTY DEFENDANTS

NOW COMES the Plaintiff, William Lockwood, by his attorneys, Michael P. Smith, and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C. and for Answers to Interrogatories propounded to him by Third Party Defendant, SR Suntour, Inc., says:

a)      The information supplied in these Answers to Interrogatories is not based solely on the knowledge of the executing party, but includes the knowledge of the party's agents, representatives and attorneys, unless privileged.

B)      The word usage and sentence structure is that of the attorney and does not purport to be the exact language of the executing party.

1. At the time of sale of the bicycle in question,

   a) Please list and describe each defect or defective condition you claim contributed to and / or caused the accident in question.

   b) State each act or failure to act on the part of the defendants which caused or contributed to the alleged defects or defective conditions of which you complain.

   c) Describe in detail what the defendants either should have done or should have refrained from doing which would have resulted in the prevention of the alleged defects and/ or defective conditions of the bicycle in question.

   **ANSWER:** The fork, fork crown and steer tube were defective or in a defective condition. The Defendants, who are the manufacturers of the Bicycle, do not have any information regarding the design of the fork or the assembly of the fork into the Bicycle, and have admitted to taking no action to test or inspect the subject components. The Defendants failed to adequately inspect and test the product for safety prior to offering it for sale, and they failed to discover that the product was dangerously defective, improperly designed and manufactured, inadequately tested and inspected, entirely unfit for duty and unsafe for use, and constituting a hazard to the user. The Third Party Defendants are also referred to the Reports signed by John D. Schubert, Robert W. Hinton, Ph.D., and James Green, P.E., DEE, that have been produced in discovery as part of the Plaintiff's expert disclosures, as well as to the depositions taken on April 11, 2003 and April 14, 2003 of these experts.

2. At the time of the sale of the bicycle in question, do you claim that the defendants in any way violated any trade or industry standards, safety standards, state, local or federal

government laws, rules, or regulations in the manufacture, or assembly process for the bicycle or any part thereof. If so, for each alleged violation of a standard of care and for each defendant,

    a)    Describe the standard and define in detail the nature and extent of the alleged standard;

    b)    State how the alleged standard was derived and the authority or authorities upon which you rely on to assert the existence of such a standard;

    c)    Set forth the facts to support your contention that a defendant or defendants deviated from or violated the standard of care;

    d)    How and in what manner any such violation caused or contributed to cause the alleged accident;

    e)    The code section, rule, regulation or law, if any, which was allegedly violated.

**ANSWER:** The Defendants may have violated CPSC Rules and Regulations, including but not limited to Sec. 1512.13 and .14. The Third Party Defendants are also referred to the Reports signed by John D. Schubert, Robert W. Hinton, Ph.D., and James Green, P.E., DEE, that have been produced in discovery as part of the Plaintiff's expert disclosures as well as to the depositions taken on April 11, 2003 and April 14, 2003 of these experts.

3.    At the time of the sale of the bicycle in question, do you contend that any industry standards or practices, rules, laws, or regulations required any specific warnings to the plaintiff regarding his use of the bicycle in question? If so, state what they were, and when, how, by whom any such warnings should have been given and provide the purpose of any such warnings.

**ANSWER:** Plaintiff is making no such contention at this time.

4. At the time of sale of the bicycle in question, state approximately the number of bicycles with suspension forks which were sold and which utilized a mechanical thermal bond and/ or press fit of the steerer tube into the fork crown and state the number, if any, of suspension forks which were known to have separated. Please state the source or sources of the information for your responses to those questions.

**ANSWER:** Plaintiff has no source or sources of information that allow him as a consumer to determine the approximately the number of bicycles with suspension forks which were sold in 1997 (or in any year), which utilized a mechanical thermal bond and/ or press fit of the steerer tube into the fork crown; nor does the Plaintiff know the number of suspension forks that may have separated.

5. Please identify the person or legal entity who assembled the bicycle in question, date of assembly, and when and by whom the steerer tube and fork crown were fitted together.

**ANSWER:** Based on the corporate designee deposition of the Defendant Pacific Cycle, the Bicycle was assembled in part by the China Bicycle Company at the direction of Pacific Cycle, sometime after August of 1995. Such assembly included incorporation of the fork to the Bicycle. Plaintiff does not know whether the bond between the steer tube and the fork crown was performed by Suntour, by China Bicycle Company, or by some other entity, but understands that such a bond is generally created by the fork manufacturer. When the Bicycle was purchased from Toys "R" Us, an agent or employee of the Defendant Toys "R" Us - Delaware, Inc. ("Toys 'R' Us") assembled a portion of the Bicycle, presumably those portions of the assembly set out in the Owner's Manual (i.e., wheels and handle bars)..

6.   Unless previously answered, please state all the facts upon which you rely to support your allegations of negligence set forth in your answer to Pacific Cycle's interrogatory no.8.

**ANSWER:** See Answer No. 1; the Depositions of William Lockwood; Diane Saunders; Anitia Van Amber; John D. Schubert: Robert W. Hinton, Ph.D.; and James Green, P.E., DEE; see also the Reports signed by John D. Schubert, Robert W. Hinton, Ph.D., and James Green, P.E., DEE. and produced to the Defendants on or about August 29, 2002.

7.   List specifically each special damage dollar amount which you claim you suffered as a result of the accident in question and state whether any of the special damages have been paid and, if so, identify the person or persons who paid each bill and/ or special damage and the date of payments.

**ANSWER:**   William sustained bilateral LeFort facial fractures as well as a complex mandibular symphyseal fractures with cortical bone loss and the loss of teeth nos. 8, 9, 22 - 27 (his upper and lower jaws were fractured, teeth broken or lost). His tongue was also sliced, and his nose was broken. He has undergone 15 surgical procedures for these injuries, and he is reasonably expected to need additional surgeries in the future.

His family purchased a hospital bed and suctioning device for their home, and except for medical appointments, William remained home and confined to bed for months. He lost one-third of his weight, 60 pounds, while his jaw was wired shut for three months and he sipped fortified milk shakes through a straw. A physical therapist visited the home three times a week to help William learn to walk again due to his loss of full muscle function in his legs.

William has permanent nerve damage on the front lower right part of his lip that extends down to the bottom of his jaw and has no sense of feeling in this area. He has scars on the inside of his mouth. He experiences jaw pain daily. Several times a month, without any warning, he has TMJ pain, lasting 15 to 20 minutes. While experiencing this pain, he has difficulty swallowing, chewing or talking. He suffers from "random" headaches. His ribs, lower back, right shoulder, right elbow and knee ache as well. He understands that he will experience the miscellaneous head pains for the rest of his life, another 58 years according to the life tables.

During his recovery when he was confined to his house, he received in-home class instruction. He lost all of his friends, however, and when he was finally able to return to high school, his face was still swollen from his surgeries, and his front teeth, top and bottom, were missing. He felt humiliated and had difficulty making new friends.

Because of his reconstructive injuries, William can no longer engage in any activities which may result in any trauma to his face. Most contact sports, therefore, are out of the picture. Moreover, because of a fear of another facial type injury, William no longer rides a bicycle or a skateboard, and he no longer rollerblades or ice skates.

Accordingly, the Plaintiff claims the following damages:

| | | | |
|---|---|---|---|
| a. | Past Medical and other expenses:<br>(**See Exhibit A**) | | $101,204.53 |
| b. | Future medical expenses: | | $40,000.00 |
| c. | Lost wages: | | $5,000.00 |
| d. | Future lost wages | | For time lost as a result of the future surgery |

    d.   <u>Physical and emotional pain and suffering</u> to be determined by the jury.

    e.   <u>Permanent partial disability</u> to be determined by the jury.

    f.   Plaintiff reserves the right to update his medical expenses as of the date of trial.

The majority of the past, non-dental medical expenses were by MAMSI. Some was paid by Diane Saunders, the Plaintiff's mother. A portion of the dental medical expenses were paid by Mrs. Saunders. A portion of the dental medical expenses remain unpaid. None of the counseling expenses have been paid.

I DO SOLEMNLY DECLARE AND AFFIRM under the penalties of perjury that the contents of the aforegoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
WILLIAM LOCKWOOD


_____
PAUL D. BEKMAN
MICHAEL P. SMITH
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 W. Pratt Street
Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff