IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM LOCKWOOD, | * | |
|     Plaintiff | * | |
| v. | * | Civil Action No. WMN-02-2068 |
| PACIFIC USA, LTD., <u>et al.</u>, | * | |
|     Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**THIRD PARTY DEFENDANT'S, SR SUNTOUR, INC., OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE PROPOSED EXPERT TESTIMONY OF ANDREW BLACKWOOD, PH.D. AND CROSS-MOTION TO PRECLUDE PROPOSED EXPERT TESTIMONY OF PLAINTIFF'S ALLEGED EXPERTS, HINTON, SCHUBERT, AND GREEN**

The gravamen of plaintiff's claim is his allegation that the mechanical bond fit that connected the steerer tube to the fork crown of his bicycle loosen as a result of the plaintiff's normal expected use of the bicycle and not due to any abuse or misuse of the bicycle.[1] Plaintiff contends that the occurrence of the accident of June 7, 1999 proves that a defect existed in the bicycle at the time of the sale of the bicycle in May of 1997 although plaintiff does not know how, why, or when the mechanical bond fit loosen. (Green depo. at 13-14, 42, Hinton depo. at 38, 39, 44, 61).

---

[1] Plaintiff's alleged expert, Hinton, established for the plaintiff that there were not any industry standards concerning whether there should be a safety device to prevent a steerer tube from pulling out of the fork crown. Hinton depo at 41. In fact, all joints (mechanical bond fits) that Mr. Hinton is aware of "are once-and-done manufactured joints" which cannot be retightened or inspected. Hinton depo. at 58-59. There are no written standards in the bicycle industry concerning how the bond fit between the steerer tube and fork crown is to occur. Green depo. at 18. Cited pages of the depositions of plaintiff's alleged experts are attached as Exhibit 1 for Hinton deposition, Exhibit 2 for Schubert's deposition, and Exhibit 3 for Green's deposition.

#343767

Plaintiff's alleged expert, Robert W. Hinton, admits that there are two equally possible reasons as to why the mechanical bond fit loosen and that one of the two possibilities is an abuse of the bicycle:

> Q. So your opinion on – concerning this accident depends on the fact that the bike was not abused in any way that would have affected the bonding of the fork? Prior to the date of the accident, June 9, 1999. (sic) Correct?
>
> A. Well, again I don't have the numbers to back up an opinion on that. But I think the - - one of the two things could be occurring here. One is that you have a joint that's right on the borderline of normal use breakage. That would be one possibility.
>
> The other possibility is you have a joint much stronger than anything that you can do to it in normal use and you had an event somewhere along the way that may have broken that joint. And it could have been an event that nobody really noticed or knew about. And once the joint is broken, then normal use can really make that wear slightly and separation would occur.
>
> Q. So either one of those possibilities are equally possible
>
> A. Yes. I don't have a firm opinion because I don't have the - - either the background or the measurements.
>
> Q. So it could be either way, you just can't tell?
>
> A. Yes.

Hinton deposition at 56-57.

Previously, plaintiff's alleged expert, Hinton, had testified that he did not know what happened to cause the mechanical bond fit to separate. He testified that the bond fit "obviously separated, so something broke the bond. Whether it was normal use or some overload condition, I really don't have the history - - but I can tell you that something, once the bond is broken, it's only broken once." Hinton depo. at 44.

Plaintiff's alleged experts believe that the mechanical bond fit separated due to a defect because plaintiff's deposition testimony, deposition testimony of plaintiff's friend,

#343767                                    2

Jessie Wolcott, and their visual inspection of the bicycle after the accident led them to the further belief that the bicycle was not abused or misused. However, as plaintiff's alleged expert, Schubert, testified different people will have a different threshold for what they call abuse. Schubert depo. at 80. Additionally, and as pointed out *supra*, plaintiff does not know how, why, or when the mechanical bond fit separated. Finally, plaintiff's alleged expert, Hinton, admitted that it would be unusual for a plaintiff who is seeking monetary damages to come out and say that he specifically abused a bicycle!!! Hinton depo. at 62. Thus, the issue of abuse or misuse of the bicycle is a major liability issue in this litigation.

Plaintiff seeks to preclude the testimony of Dr. Blackwood, a metallurgical engineering and materials engineering expert with a Ph.D. Plaintiff's instant motion contends that Dr. Blackwood is not qualified to testify in this litigation and that Dr. Blackwood's opinions are not reliable. Dr. Blackwood has an expertise which is beyond the realm of knowledge possessed by any jury panel of lay people in that as a metallurgical and materials engineering expert he has knowledge in fabrication and joining technology and failure modes which would be helpful to the jury's understanding of the issues in this litigation.

Plaintiff's allegations of the infirmities of Dr. Blackwood are either shared by plaintiff's alleged expert witnesses, Hinton, Schubert, and Green, or are irrelevant. The depositions of the plaintiff's alleged experts established the fact that in May 1997 at the time of the sale of the bicycle there were no written industry standards concerning how the bond fit in question should occur. There were no industry standards that required a mechanical bond fit to be welded. There were no rules or regulations establishing

standards for bicycles. There were no industry standards as to what the strength of the bond fit should have been.

Additionally, plaintiff's alleged experts agreed that no one could say specifically when the bond fit was disconnected and how or why it became disconnected. Also, there was no way of testing what the strength of the mechanical bond was or how much force would be needed to release the front fork from the steer tube. None of those witnesses had any knowledge of the tests performed by SR Suntour, Inc. on the Duo Track 7006. None were or are involved in manufacturing or designing fork crowns or in manufacturing bicycles. None were aware of any other Duo Track 7006 model becoming separated as alleged in this claim. Except for a visual inspection of the bicycle and the steer tube and fork crown, none of the witnesses conducted any tests on the bicycle.

Dr. Blackwood is well qualified to present his testimony as to how metals react, why dissimilar metals may be and are bonded together for bicycle components and for components used in automobiles, airplanes, etc., why the evidence of very heavy use and damages to the bicycle in question leads him to the conclusion that the bicycle in question was misused and abused, and why the use of welding and/or adhesive bonding would be difficult to increase the integrity of the joint between the steer tube and fork crown. With a bachelor degree in metallurgical engineering and a Ph.D. in materials engineering, Dr. Blackwood is well qualified to express his opinion that based on his inspection of the bicycle, Mr. Tanaka's affidavit, review of the depositions, and review of the entire record, that plaintiff's injury occurred as a result of misuse and abuse of the bicycle which eventually caused the separation of the steer tube from the fork crown and the accident and injuries suffered by the plaintiff on June 7, 1999.

Plaintiff's motion also attacks Dr. Blackwood's opinions as not reliable again for many alleged infirmities which are shared by plaintiff's alleged experts. As pointed out supra, none of the witnesses have conducted any tests on the fork crown. Every witness inspected the bicycle but made no further failure analysis. None of the witnesses have knowledge of the methodology of how the manufacturer of the fork crown bonded the fork crown to the steer tube. None of the witnesses knew the amount of force needed to cause the bond fit to loosen.

Dr. Blackwood's opinions are based on exactly the same information and same kind of inspection on which plaintiff's alleged experts' opinions are based. To preclude Dr. Blackwood from testifying and to allow plaintiff's alleged experts to testify, would be unfair and unjust.

Plaintiff's motion also attacks Dr. Blackwood's deposition testimony on the alleged contention that Dr. Blackwood's opinions are further unreliable on the alleged basis that Dr. Blackwood is unable to say that the abuse predated the loosening of the bond joint. Plaintiff's counsel, however, misinterprets Dr. Blackwood's deposition testimony. Attached hereto as Exhibit 4 is Dr. Blackwood's Affidavit which sets forth his statement on when the overall abuse and misuse of the bicycle occurred. There can be no doubt that Dr. Blackwood's opinion is that the abuse and misuse of the bicycle caused the bond fit to loosen.

It is therefore respectfully requested that the court enter an order denying plaintiff's motion to preclude proposed expert testimony of Andrew Blackwood, Ph.D. or

#343767                                              5

in the alternative, grant an order precluding the proposed expert testimony of plaintiff's alleged expert witnesses, Robert W. Hinton, John D. Shubert, and James W. Green.

        Respectfully submitted,

        /S/  *Edward J. Lopata*
        _____
        Edward J. Lopata
        Federal Bar No. 02958
        Scott A. Thomas
        Federal Bar No. 11692
        TYDINGS & ROSENBERG LLP
        100 E. Pratt Street, 26th Floor
        Baltimore, MD  21202
        (410) 752-9700

        Attorneys for Third-Party
        Defendants, SR Suntour, Inc.
        and SR Suntour, USA

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of June, 2003, the foregoing Third Party Defendant's, SR Suntour, Inc., Opposition to Plaintiff's Motion to Preclude Proposed Expert Testimony of Andrew Blackwood, Ph.D. and Cross-Motio to Preclude Proposed Expert Testimony of Plaintiff's Alleged Experts, Hinton, Schubert, and Green was electronically filed to the following:

>Paul D. Bekman, Esquire
>Michael Patrick Smith, Esquire
>Israelson, Salsbury, Clements & Bekman, LLC
>300 W. Pratt Street, Suite 450
>Baltimore, Maryland 21201
>
>*Attorneys for Plaintiff*
>
>Bruce R. Parker, Esquire
>Michele R. Kendus, Esquire
>Venable, Baetjer and Howard LLP
>Two Hopkins Plaza, Suite 1800
>Baltimore, Maryland 21201
>
>*Attorney for Pacific Cycle, LLC, Pacific USA, Ltd., and Toys "R" Us-Delaware, Inc.*
>
>Kenn Brotman, Esquire
>David Rammelt, Esquire
>Kelley Drye and Warren
>333 W Wacker Drive, Suite 810
>Chicago, IL 60606
>
>*Attorney for Pacific Cycle, LLC*

>/S/  *Edward J. Lopata*
>_____
>Edward J. Lopata