IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM LOCKWOOD | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. WMN-02-CV-2068 |
| PACIFIC USA, LTD., et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO SUNTOUR'S CROSS-MOTION
TO PRECLUDE PROPOSED EXPERT TESTIMONY OF PLAINTIFF'S
ALLEGED EXPERTS, HINTON, SCHUBERT AND GREEN**

William Lockwood, by his attorneys, Paul D. Bekman, Michael P. Smith, and Salsbury Clements Bekman Marder & Adkins, L.L.C., hereby files this opposition to Suntour's Cross-Motion to preclude the proposed expert testimony of each of Plaintiff's experts.

**INTRODUCTION**

Suntour has responded to Plaintiff's timely motion to preclude the testimony of Andrew Blackmon with a motion of its own, seeking to preclude each of the Plaintiff's experts from testifying. Essentially, Suntour claims that because Plaintiff's experts reviewed the same information as Dr. Blackwood, inspected the same Bicycle, and like Dr. Blackwood carried out no specific tests on the Bicycle, it would be "unfair and unjust" to allow Plaintiff's experts to testify, while precluding Dr. Blackwood from testifying. See Suntour Cross-Motion at 5.[1]  This simplified "what's good for the goose is good for the gander" argument fails to recognize the crucial differences between the parties' experts and their respective opinions. As shown below,

---

[1] Suntour's Cross-Motion is contained within its Memorandum in Opposition to Plaintiff's Motion to Preclude Proposed Expert Testimony of Andrew Blackwood, Ph. D.

Suntour's Cross-Motion should be denied.

## ARGUMENT

At the outset, Plaintiff notes that Suntour makes no specific <u>Daubert</u> challenge.[2] Suntour does not identify the opinions of Plaintiff's experts that it contends are not admissible under Fed. R. Evid. 702; it does not provide the Court with any basis for concluding why Plaintiff's experts are unqualified to give those opinions; and it does not demonstrate why any of those opinions are unreliable. In the absence of any showing that Plaintiff's experts are completely unqualified to give any opinions in this case, Suntour's Cross-Motion should be summarily denied. Even if the Court were to engage, however, in a sua sponte analysis of the qualifications and opinions of Plaintiff's experts, its analysis would determine that their opinions are admissible under Fed. R. Evid. 702.

Because the defect in this case involves bicycle, engineering, metallurgical, and safety issues, the Plaintiff does not rely on just one expert. He relies, instead, upon the opinion testimony of (a) James Green, a professional engineer who has been working as a consultant and forensic engineer in the bicycle industry for over 30 years; (b) Robert Hinton , Ph. D., a specialist in metallurgical engineering who has additional expertise specifically in interference fits; and (c) John D. Schubert, an expert and an industry writer and consultant in bicycle safety. Their Rule 26(a)(2) Reports which contain their respective C.V.s are attached as <u>Exhibit 1</u> (Green), <u>Exhibit 2</u> (Hinton) and <u>Exhibit 3</u> (Schubert).

Their proposed opinions, while complementary of one another, are divided along the

---

[2]<u>See</u> <u>Daubert v. Merrell Dow Pharm., Inc</u>, 509 U.S. 579, 113 S.Ct. 2786; 125 L. Ed. 2d 469 (1993)

areas of their respective expertise. Green and Schubert primarily address the bicycle-specific issues; Green and Hinton address the engineering-specific issues; and Hinton addresses the metallurgical and interference fits issues. The thrust of their combined testimony is that the defect in this case concerns the bond between the Bicycle's steer tube and the fork crown. See Hinton Depo. at 59 (Exhibit 4); Schubert Depo. at 95 (Exhibit 5); Green Depo. at 64 (Exhibit 6).

Green and Schubert, based on their knowledge of bicycles and the bicycle industry, will testify about bicycles generally and about the specific components involved in this case - bicycle forks and a steer tubes. They will testify that the front fork is connected to the head tube of the bicycle frame by the steer tube which, except for its bottom portion, is totally inside the head tube. The bottom portion of a steer tube extends out the lower end of the head tube and is designed to go inside the fork crown where it is bonded into place so that it does not separate from the fork crown. Once placed and bonded inside the fork crown, the steer tube remains hidden from view and needs no maintenance or inspection for the life of the bicycle. See Schubert Report at 2-3 (Exhibit 3); Green Report at 2 (Exhibit 1).

Both Green and Schubert will tell the jury that the steer tube is a single point failure mode. If it separates from the fork crown during normal use of the bicycle, a crash inevitably results, because after the front wheel falls off, the rider loses all control of the bicycle and falls to the riding surface, usually a roadway or sidewalk. The integrity of the bond is such that the steer tube should not separate from the fork crown under normal and expected use, and the standard in the industry is to design and manufacture a fork so that the steer tube and fork crown do not separate under normal and expected use. See Schubert Report at 1, 3-4 (Exhibit 3 ); Green Depo.,

at 64 (Exhibit 6).[3]

A separation occurred in this case under normal and expected use. Each expert will opine that such a separation, in and of itself, is evidence of a defect. See Hinton Depo. at 59 (Exhibit 4); Schubert Depo. at 95 (Exhibit 5); Green Depo. at 64 (Exhibit 6). In addition, the inspection of the suspect components of the Bicycle showed a more specific cause of the separation. The sole bond between hollow, thin walled steel steer tube and an aluminum alloy fork was an interference fit. See Hinton Report at 1 (Exhibit 2); Hinton Depo at 11 (Exhibit 4). The steer tube was not welded or chemically bonded into place. See Green Report at 2 (Exhibit 1); Hinton Report at 1 (Exhibit 2). No safety device, i.e., redundancy, or retightening device was in place to prevent the steer tube from pulling out of the fork crown if the tube-to-fork crown mechanical bond became loose or worn from normal use. See Hinton Report at 2 (Exhibit 2); Green Depo. at 11-12 (Exhibit 6).

Doctor Hinton will testify that an interference fit was inadequate for three reasons: (1) the use of the two dissimilar metals in an interference fit reduces the strength of the bond by about two-thirds; (2) the thin-wall of the steer tube further reduces the ability to get a strong fit; and (3) the bond between the steel steer tube and the aluminum alloy fork crown is further compromised by changes in temperature, meaning that portions of the interference fit are lost, i.e. the grip is loosened, because aluminum thermally expands at twice the rate of steel. Data supporting these opinions appear in basic engineering texts, excerpts of which are attached to Dr. Hinton's Report.

---

[3]Green, who has independently performed laboratory testing on approximately 300 different bicycles, will testify that the force needed to break or destroy the bond between the steer tube and the fork crown is between 2,000 and 3,000 pounds. His testing has shown that the rest of the bicycle will come apart before the bond between the steer tube and the fork crown fails. Green Depo. at 14, 42-43 (Exhibit 6)

See Hinton Report (Exhibit 2); Hinton Depo at 11-14, 41-42, 45-46 (Exhibit 4)

Both Green and Hinton will further opine that the failure to have a redundancy or safety device in place to prevent the steer tube from pulling out of the fork crown if the tube-to-fork crown interference fit became loose or worn from normal use made the bond unsafe. See Hinton Depo. at 58 (Exhibit 4); Green Depo. at 12, 19, 38 and 46 (Exhibit 6). In addition, as set forth in the Rule 26(b)(a) Reports, the failure to weld or chemically bond the steer tube in place, caused the steer tube to prematurely separate from the fork crown. See Green Report at 2 (Exhibit 1); Hinton Report at 2 (Exhibit 2). The failure to weld or chemically bond the steer tube into the fork crown is a manufacturing defect. See Green Report at 2 (Exhibit 1). The failure to adequately secure or bond these two critical components was the cause of the subject incident. See Green Report at 2 (Exhibit 1); Schubert Report at 4 (Exhibit 3).

These opinions are based upon sufficient facts or data and are the product of reliable principles and methods applied to the facts and data of this case. Under Daubert and Fed. R. Evid. 702, the opinions are admissible. Suntour's Cross-Motion should be denied.

_____
PAUL D. BEKMAN
MICHAEL P. SMITH
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS, L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of June 2003, a copy of the foregoing Plaintiff's Opposition to Suntour's Cross-Motion to Preclude Proposed Expert Testimony of Plaintiff's Alleged Experts Hinton, Schubert and Green was forwarded electronically to the following:

Michele R. Kendus, Esquire
Venable, Baetjer & Howard, LLP
1800 Mercantile Bank & Trust Bldg.
Two Hopkins Plaza
Baltimore, MD 21201-2978

Attorneys for Defendants, Pacific USA, LTD
and Pacific Cycle, LLC, and Toys "R" US-Delaware, Inc.

Edward J. Lopata, Esquire
Scott Thomas, Esquire
Tydings & Rosenberg LLP
100 E. Pratt Street, 26th Floor
Baltimore, Maryland 21202

Attorneys for Third-Party Defendant
SR Suntour, Inc. and SR Suntour, USA

_____
MICHAEL P. SMITH