**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WILLIAM LOCKWOOD            :
                            :
v.                          :   Civil Action WMN-02-2068
                            :
PACIFIC USA, LTD., et al.   :

**MEMORANDUM**

Presently before the Court are numerous motions filed by Plaintiff, Defendants, and Third-Party Defendants. The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing on the motions is necessary (Local Rule 105.6).

**I. BACKGROUND**

This is a product liability action concerning a Pacific Cycle USA "Strike" mountain bike (the bicycle) which was manufactured by Defendant Pacific Cycle, L.L.C. and sold by Defendant Toys "R" Us. On June 7, 1999, while Plaintiff was riding the bicycle, he was severely injured when the steer tube separated from the fork crown.[1] The fork consists of two blades that extend down on either side of the front tire and meet the front wheel hub. The top portion of each blade is attached or joined to the fork crown which lies above the wheel. The front fork is connected to the head tube of the

---

[1] Plaintiff was born on May 28, 1983 and had turned sixteen ten days before this accident.

bicycle frame by the steer tube, which except for its bottom portion, is totally inside the head tube.  When the separation occurred, Plaintiff fell forward, hitting the roadway face first.  As a result, Plaintiff sustained bilateral LeFort facial fractures as well as a complex mandibular symphyseal fracture with cortical bone loss and the loss of eight teeth.  His tongue was also sliced, and his nose was broken.  His injuries required approximately fifteen surgical procedures and extensive physical rehabilitation and still require future dental surgery and reconstructive rhinoplasty.

Plaintiff originally brought this action in the Circuit Court for Baltimore City and alleged negligence (Count I), strict liability (Count II), and warranty (Count III).  Defendants subsequently removed the case to this Court.  Later, Defendants filed a third-party complaint against SR Suntour, Inc./SR Suntour, USA (collectively, SR Suntour) because upon inspection of the bicycle, it was revealed that the only component alleged to be at issue in this case, which is a front fork assembly, was designed and/or manufactured by SR Suntour.

## II.  LEGAL STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to

interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  <u>Id.</u> at 323.  The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor."  <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial.  <u>Celotex</u>, 477 U.S. at 324.  Unsupported speculation is insufficient to defeat a motion for summary judgment. <u>Felty</u>, 818 F.2d at 1128 (citing <u>Ash v. United Parcel Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986)).  Furthermore, the mere existence of some factual dispute is

insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." Id.

**III.  DISCUSSION**

    A.  <u>Motions for Summary Judgment to Dismiss Plaintiff's Claim for Certain Damages</u>[2]

    Defendants and Third-Party Defendants request that the Court grant summary judgment as to Plaintiff's claim for damages related to medical costs incurred while he was a minor. Defendants argue that because Plaintiff's mother, Diane Saunders, was responsible, by law, to pay for any medical costs related to the treatment of Plaintiff while he was a minor, the right to recover those medical expenses vests exclusively in her. Saunders is not a party to this action, and any claim brought by her on her own behalf would be barred by the applicable statute of limitations.

    Third-Party Defendants adopt and incorporate Defendants'

---

    [2] Defendants filed a Motion for Summary Judgment to Dismiss Plaintiff's Claim for Certain Damages (Paper No. 41), and Third-Party Defendants filed a Motion for Summary Judgment on Plaintiff's Claim for Medical Expenses and Other Related Expenses Incurred When Plaintiff was a Minor (Paper No. 62). Because both of these motions relate to the same claim for damages, the Court will address them together.

motion and further argue that Plaintiff is precluded by Maryland law from recovering damages based on speculation or conjecture. SR Suntour claims that in response to one of its interrogatories, "plaintiff intentionally or otherwise did not identify when and by whom the special damages were paid." Third-Party Defs.' Mot. at 1. According to SR Suntour, "plaintiff's information as provided does not form a basis for a claim for these special damages to be submitted to a jury for its consideration as to whether the plaintiff is the real party in interest to claim such special damages." Id. at 2.

Plaintiff argues in response that there is nothing speculative about his interest in this case; he is the person injured, and he is the person who submitted to and endured numerous operations. Further, Plaintiff submitted an itemized list of the past medical and other expenses incurred as an exhibit to his answer to SR Suntour's interrogatory. Additionally, he produced in discovery reports from two treating physicians regarding his past and future treatments. Pl.'s Opp. at 4-5. The Court agrees with Plaintiff. His claim for past medical expenses does not appear to be based on speculation or conjecture; he provided an itemized list of expenses and reports from doctors describing the treatments.

Under Maryland law, parents have a legal obligation to provide necessary medical care to their minor children. Md. Code Ann., Fam. Law § 5-203(b) (2002). Maryland courts have consistently held that parents who have a legal obligation to pay for medical services for their minor children are entitled to recovery for those medical expenses. See, e.g., Garay v. Overholtzer, 332 Md. 339, 346 (1993). Consequently, in a tort action involving injuries to a minor child, two causes of action arise. The minor has a cause of action for injuries, and the parent or parents of the minor have a cause of action for medical expenses incurred for treatment of the minor's injuries. Id.

Exceptions to the general rule that parents possess the exclusive right to recover a minor's pre-majority medical expenses exist. Such exceptions include: "1) when the minor child has paid or agreed to pay for expenses, 2) when the minor child is legally responsible for payment, such as by reason of emancipation, or the death or incompetency of his parents, 3) when the parents have waived or assigned their right of recovery in favor of the minor child, or 4) when recovery of expenses is permitted by statute." Id. at 366 (citing Moses v. Akers, 122 S.E.2d 864, 866 (Va. 1961)).

Plaintiff argues that a genuine factual dispute exists as

to his responsibility to pay for his pre-majority medical expenses.  First, he argues that he will have personal liability for the potential subrogation claim of his health insurer.  Pl.'s Opp. at 2.  According to Plaintiff, "[a]llowing a health insurer to seek to recoup their monies expended for William's pre-majority benefit while refusing to allow William to pursue redress for these same damages from the culpable tortfeasor would be an absurd result."  Id. at 3.

   The Court rejects this argument.  A health insurer may pursue subrogation with respect to its members' recoveries from third parties.  Singh v. Prudential Health Care Plan, Inc., 2003 WL 21513027 at *2 (4th Cir. 2003).  If a member recovers no damages from a tortfeasor, a health insurer will have no subrogation right.  Here, if Plaintiff does not recover for any pre-majority medical expenses, he will have no individual liability to his insurer for those medical expenses.

   Second, Plaintiff argues that many of the bills for medical and dental care were not covered by his insurance policy.  His mother claims that she has limited financial resources, has no substantial savings account, does not have the financial ability to pay these costs (Saunders Aff. at ¶

8), and that as a result, Plaintiff is personally responsible for these expenses. Defendants and Third-Party Defendants argue that Plaintiff's mother's affidavit does not create a genuine issue of material fact because "there can be no <u>genuine</u> dispute that a mother, who makes $80,000 per year, and who testified that she was going to buy her son a new Jeep Wrangler for his sixteenth birthday, is not able to meet this obligation [the unpaid medical bills]." Defs.' Reply at 4 (emphasis in original). The Court disagrees. At this stage of the litigation, "it is not appropriate for the court to make credibility determinations, weigh the evidence, or draw inferences from the facts which are adverse to the non-moving party; these are jury functions." <u>Neutron, Inc. v. American Assoc. of Electrodiagnostic Medicine</u>, 189 F.Supp.2d 271, 274-75 (D. Md. 2001) (citing <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987)). Because Plaintiff has demonstrated that a triable issue of fact exists for trial, the Court will deny Defendants' and Third-Party Defendants' motions for summary judgment to dismiss Plaintiff's claim for certain damages.[3]

---

[3] Plaintiff makes the additional argument that Saunders, his mother, assigned to him any claims she may have had to recover against Defendants. Because the Court concluded that a triable issue of fact exists as to Saunders' ability to pay for the medical expenses, the Court need not reach the

B.  Plaintiff's Motion for Partial Summary Judgment[4] and SR Suntour's Cross-Motion for Summary Judgment on Plaintiff's Complaint[5]

When both parties file motions for summary judgment, the court applies the same standards of review as it does when one party files a motion for summary judgment.  Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment--even where ... both parties have filed cross motions for summary judgment.")(emphasis omitted), cert. denied, 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  Towne Mgmt. Corp. v. Hartford

---

assignment argument.

[4] Paper No. 40.

[5] Paper No. 65.  Also related to these two motions are: Plaintiff's Motion to Strike Affidavit of Naoji Tanaka (contained in Paper No. 52), Defendants' Motion to Adopt Third-Party Defendant's Cross-Motion for Summary Judgment on Plaintiff's Complaint and for Leave to File a Memorandum in Support Thereof (Paper No. 76), and Plaintiff's Motion to Strike as Untimely the Defendants' Motion for Summary Judgment (Paper No. 78).

Acc. and Indem. Co., 627 F.Supp. 170, 172 (D. Md. 1985)(quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 (2d ed. 1993)).

Plaintiff argues that summary judgment on the issue of liability as to his claims for strict liability and warranty is appropriate because no genuine issue of material fact exists.  To recover under the strict liability claim in this action, Plaintiff must show (1) the bicycle was in a defective condition at the time it left the possession or control of the seller; (2) the bicycle was unreasonably dangerous to the user; (3) the defect was the cause of Plaintiff's injuries; and (4) the bicycle was expected to and did reach the consumer, Plaintiff, without substantial change in its condition.  See Phipps v. General Motors Corp., 278 Md. 337, 344 (1976).  In order to show that a product was in a defective condition, a plaintiff may show a manufacturing defect (i.e., that the product fails to conform to the manufacturer's specifications) or a design defect (i.e., that the product was manufactured as intended, but that the design was defective and unreasonably dangerous).  Singleton v. Int'l Harvester Co., 685 F.2d 112, 115 (4th Cir. 1981); Klein v. Sears, Roebuck and Co., 92 Md.App. 477, 485 (1992).

In this action, Plaintiff submits three expert reports.

Plaintiff's experts concluded that there was a failure on the manufacturer's part to adequately secure the steer tube to the fork crown, and that this failure caused the separation of the parts.  In the first report, expert James Green concludes that the subject steer tube is designed to be welded into place so it does not separate from the fork crown.  Based on his examination of the bicycle, Green found that the steer tube was not welded into place, causing the steer tube to prematurely separate from the fork crown.  Green characterizes the failure to weld the steer tube into the fork crown as a manufacturing defect.  Pl.'s Exh. B, Green Report at 2. Plaintiff's second expert, John Schubert, concludes that the system was improperly designed.  Schubert describes three alternative construction methods that were common industry practice at the time the subject bicycle was made: an all-steel welded construction; a steer tube with a flange at the bottom, and a properly epoxied press-fit system.  Pl.'s Exh. C, Schubert Report at 4.  Similarly, Plaintiff's third expert, Robert Hinton, opines that the design was defective because of the insufficiency of the materials used for the construction of the fork and because of the system's failure to use a safety or retightening device.  Pl.'s Exh. E, Hinton Report at 2.

In response, Defendants' expert, David Mitchell, opines that the suspension fork at issue was not defectively designed. Mitchell observed that the bicycle was designed and assembled in accordance with accepted engineering practice and did not violate any known applicable codes or standards. Additionally, the fork on the bicycle has not been the subject of any recalls by any bicycle distributor or the Consumer Product Safety Commission nor has it displayed a history of fork failures. Defs.' Exh. 3, Mitchell Report.

In a report somewhat difficult to interpret, Mitchell opines that the specific fork installed on the bicycle at issue appears to have differed from other virtually identical SR Suntour forks in a manner that permitted the fork separation. Mitchell states that the "specific strength of the mechanical joint holding Mr. Lockwood's fork together cannot be assessed at this juncture due to the separation and consequential damage. Accordingly, the efficacy of the steerer tube/crown joint cannot be evaluated in the post-accident condition resulting in a specific opinion as to any defect or deficiency in that fork. Without knowing the specific dimensions and tolerance intended by the fork manufacturer, no specific deviation from the manufacturer's intended design may be identified at this time." Id. at 3.

Mitchell concludes "that conditions related to the manner of use and/or the specific manufacturing procedures related to this fork ultimately led to the fork separation."  Id.

These four expert reports create a material dispute as to the existence of a defective condition of the bicycle at the time it left Defendants' control.  Two of Plaintiff's experts opine that a design defect was present, while the other characterizes the problem as a manufacturing defect.  Defendants' expert disagrees that a design defect was present but his opinion does not appear to preclude the possibility of a manufacturing defect.  He states that a manufacturing defect cannot be identified at this time.  Because it is inappropriate at this stage of the litigation for the Court to make credibility determinations, weigh the evidence, or draw inferences from the facts which are adverse to the non-moving party, Plaintiff's motion for partial summary judgment as to the strict liability claim will be denied.[6]

With respect to the implied warranty claim, under Maryland law, a warranty that goods are merchantable is implied in every contract of sale, if the seller is a merchant

---

[6] Defendants argue that other disputes of fact exist, but because the Court has determined that a triable issue of fact exists as to the condition of the bike when it left the manufacturer, the Court need not reach the other arguments.

13

with respect to goods of the kind sold. See Md. Code Ann., Com. Law § 2-314(1) (2002). The implied warranty of merchantability warrants that the product is fit for the ordinary purposes for which such products are sold. Id. at § 2-314(2)(c). To show a breach of the implied warranty, a plaintiff must establish that the product was not fit for its ordinary purpose and was defective when it left the manufacturer's control. Fellows v. USV Pharmaceutical Corp., 502 F.Supp. 297, 299 (D. Md. 1980) (citations omitted). As explained above, a triable issue of fact exists as to the condition of the bicycle when it left the manufacturer's control. Accordingly, the Court will deny Plaintiff's motion for partial summary judgment as to the implied warranty claim.[7]

---

[7] In Plaintiff's reply to Defendants' opposition to his motion for summary judgment, he argues that the affidavit of Naoji Tanaka (attached to Defendants' opposition) should be stricken. Naoji Tanaka is identified in the affidavit as an employee of SR Suntour who works in engineering development. See Defs.' Exh. 7, Tanaka Aff. at ¶ 2. In his affidavit, Tanaka describes the fork at issue, the bond used to secure the steer tube into the fork crown, and the number of forks manufactured by SR Suntour using the same bond. Id. at ¶¶ 4-6. Plaintiff argues that this affidavit should be stricken because Defendants never disclosed to Plaintiff that Mr. Tanaka is an individual having any knowledge or experience related to the subject matter of this litigation. Pl.'s Reply at 9. Plaintiff argues that Defendants are attempting to use Tanaka as an expert witness but that because he was previously undisclosed, his affidavit is untimely. Id. Defendants argue that Tanaka has not been retained as an expert and that he

In considering SR Suntour's cross-motion for summary judgment on Plaintiff's complaint, the Court has noted Defendants' motion to adopt Third-Party Defendant's cross-motion for summary judgment on Plaintiff's complaint and for leave to file a memorandum in support thereof.  Under the applicable Scheduling Order, Defendants had until February 14, 2003 to file any dispositive motions.  SR Suntour had until May 15, 2003 to file dispositive motions.  On May 15, 2003, SR Suntour filed two dispositive motions.  Plaintiff filed his opposition to the first motion on May 22, 2003, and an opposition to the second motion on May 28, 2003.  On May 29, 2003, three and a half months after their dispositive motions deadline, Defendants filed the motion at issue.  Plaintiff characterizes Defendants' motion as a motion for summary judgment and claims to be severely prejudiced by this filing because he already responded to SR Suntour's motions in a timely fashion.  <u>See</u> Pl.'s Mot. to Strike.  Defendants respond

---

provides the testimony of a fact witness and party representative with personal and corporate knowledge regarding the pertinent engineering, manufacture and design of the fork assembly. Defs.' Opp. at 2.  Further, Tanaka is a representative of the third-party defendant, and Plaintiff should have ample time and opportunity to depose Tanaka because discovery as it relates to SR Suntour was extended. Additionally, SR Suntour relies on the same affidavit to support its opposition to Plaintiff's motion for partial summary judgment.  The Court will deny Plaintiff's motion to strike.

that they did not make a new and separate motion for summary judgment; rather, they requested leave to adopt SR Suntour's motion and filed their memorandum in support of that motion on May 29, 2003, prior to the June 2, 2003 deadline for responses.

The Court will deny Plaintiff's motion to strike. Plaintiff cites to no rule or caselaw that disallows a defendant to file a responsive motion in support of a third-party defendant's motion for summary judgment.  Additionally, although Plaintiff claims to be severely prejudiced by Defendants' memorandum, he characterizes his opposition memorandum as containing the same "facts and arguments previously set forth by Plaintiff in his Memorandum in Support of his Motion for Partial Summary Judgment; in his Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment; and in his Opposition to SR Suntour, Inc.'s Cross-Motion for Summary Judgment on Plaintiff's Complaint," thereby belying any argument that Defendants' memorandum is an independent motion raising new facts or legal arguments.  The Court will grant Defendants' motion to adopt third-party defendant's cross-motion for summary judgment on Plaintiff's complaint and for leave to file a memorandum in support thereof.

SR Suntour argues that Plaintiff has presented no factual evidence of any negligence on the part of Defendants. According to SR Suntour, Plaintiff "has failed to present any evidence that the defendants violated any bicycle industry standards or that the manufacture and design of the SR Duo Track 7006 fork crown in question violated any bicycle industry standards."  Suntour's Mot. at 3.  As the moving party, SR Suntour bears the initial responsibility of informing the Court of the basis of its motion and identifying the portion of the opposing party's case which it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Here, the Court concludes that SR Suntour did not fulfill its responsibility with respect to the negligence claim.  The argument presented above simply does not demonstrate that SR Suntour is entitled to judgment as a matter of law as to Plaintiff's negligence claim.  Accordingly, the Court will deny SR Suntour's motion for summary judgment as to Count I.

With respect to the strict liability and warranty claims, SR Suntour argues that Plaintiff has not demonstrated that the bicycle was defective and unreasonably dangerous at the time of its sale.  As support for its argument, SR Suntour relies on the Tanaka Affidavit and claims that because Tanaka states

17

that 8,000,000 fork crowns have been designed and manufactured by Suntour without any known separation of the steerer tube from the fork crown, "the design of the fork crown in question and the fork crown itself cannot be said to be defective and unreasonably dangerous when the bicycle was sold in May 1997." Suntour's Mot. at 4.  Additionally, SR Suntour's expert, Andrew Blackwood, opines that abuse of the bicycle, not any design or manufacturing defect, caused the bond to loosen. Suntour Exh. E, Blackwood Report at 4.

In their memorandum in support of SR Suntour's motion, Defendants argue that no specific defect has been identified that caused the alleged incident.  As explained above, in order to prevail on a product liability claim, a plaintiff must satisfy three basic elements from an evidentiary standpoint: (1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relation between the defect and the injury.  Jensen v. American Motors Corp., 50 Md.App. 226, 232 (1981).  Defendants argue that Plaintiff does not "delineate whether it was a manufacturing defect or a design defect that led to his alleged injuries."  Defs.' Mem. in Support at 7.

Plaintiff's experts testified that the front fork of the bicycle had a steel steer tube that was not welded, chemically

bonded into place or otherwise properly fastened to the aluminum alloy fork crown.  No safety devices, i.e. redundancy, or retightening device existed to prevent the steer tube from pulling out of the fork crown when the tube-to-fork crown mechanical bond became loose or worn from normal use.  According to Plaintiff's experts, that defect made the bicycle unreasonably dangerous because the steer tube is a single point failure mode.  Separation of the steer tube from the fork crown during normal use of a bicycle inevitably results in a crash, because after the front wheel falls off, the rider loses all control of the bicycle and falls to the riding surface.  Plaintiff's experts conclude that these defects caused the steer tube to prematurely separate from the fork crown and result in Plaintiff's injuries.

    The Court is satisfied that Plaintiff has demonstrated that a genuine issue exists as to whether the bicycle was in defective condition when it left the manufacturer's control.  At this stage of the litigation and as to these motions, Plaintiff, as the non-moving party, is entitled to have all reasonable inferences drawn in his favor.  Accordingly, the Court will deny SR Suntour's motion for summary judgment as to Counts II and III.

    Also presently pending before the Court are Plaintiff's

Motion to Preclude Proposed Expert Testimony of Andrew Blackwood, Ph.D (Paper No. 61) and Third Party Defendant's, SR Suntour, Inc., Cross-Motion to Preclude Proposed Expert Testimony of Plaintiff's Alleged Experts, Hinton, Schubert, and Green (Paper No. 79).  These motions relate to the use of the experts at trial and will be addressed by the Court subsequent to the pending settlement conference before Judge Gauvey set for August 19, 2003.

**IV. CONCLUSION**

For the above-stated reasons, the summary judgment motions will be denied as will Plaintiff's Motion to Strike Affidavit and Motion to Strike Defendant's Motion for Summary Judgment.  Defendant's Motion to Adopt (Paper No. 76) will be granted.  A separate order will issue.

                                            /s/
                                        William M. Nickerson
                                        Senior United States District Judge
Dated: July 24, 2003